[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-11195
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 26, 2008
THOMAS K. KAHN
CLERK

Agency No. A77-914-051

YAN LU XIU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 26, 2008)**

Before BIRCH, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Yan Lu Xiu, a native and citizen of China, petitions for review of the decision of the Board of Immigration Appeals to deny her motion to reopen her removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c). The Board found that Xiu failed to prove that conditions in China had changed since her original removal hearing. We grant Xiu's petition and we vacate and remand for further proceedings.

## I. BACKGROUND

Xiu is a native of Changle City in the Fuijan province of China. On January 2, 2000, Xiu presented a false Japanese passport to enter the United States. After her arrival, Xiu joined her husband, also a native of the Fuijan province, in New York, and gave birth to two sons.

Two weeks after Xiu entered Miami, she was charged with entering the country without a valid entry document. INA § 212(a)(7)(i)(I). The notice stated that an asylum officer found that Xiu presented a credible fear of persecution. Xiu told the asylum officer that Chinese family planning officials forced her to have an abortion one year after her marriage because she had not obtained a birth permit. After the abortion, Xiu was required to submit to an examination every three months. After Xiu failed to report for her examination in 1999, she left China in fear that she would be incarcerated.

2

Xiu conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. See 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208-16. Xiu relocated to New York and moved for a change of venue. Xiu did not appear for her removal hearing in February 2000. The immigration judge found that Xiu abandoned her application and ordered Xiu removed to China.

Xiu moved to reopen her case on the ground that counsel told her, absent a written decision regarding venue, she was not required to attend scheduled hearings. The immigration judge denied the motion. A month later, Xiu gave birth to her first son. Twenty-eight days after the birth of her second son, the Board dismissed Xiu's appeal.

In August 2007, Xiu filed a motion to reopen her case based on changed conditions in China and a motion for leave to file an application for asylum and withholding of removal based on changed country conditions and changed personal circumstances. To support her motions, Xiu offered previously unavailable evidence that officials in the Fuijan province had intensified persecution of parents of two children. Xiu presented her own affidavit, which stated that family and friends reported an increase in the use of forced abortions and sterilizations and criminal prosecution for those who resisted the family

3

planning policies. Xiu stated that village officials were aware that she had given birth to two sons while living in the United States and, because the boys were considered Chinese citizens, she feared that she would be forced to undergo sterilization. Xiu also presented an affidavit from her mother, which stated that family planning rules had been "more strictly implemented . . . in the past year" and reported two forced sterilizations in Changle City in 2006 and 2007.

Xiu offered documents from local authorities and newspaper articles to substantiate her allegations that local officials had intensified enforcement of family planning policies. A Notice issued in January 2007 by the Changle City family planning committee stated that "no additional child shall be permitted after one boy"; a married "couple" was required to "undergo the sterilization operation after the birth of their second child"; and acts "inconsistent" with the family policies were "subject to punishments accordingly." A document from the Political Bureau of the Central Planning Committee for Fujian Province instructed local family planning committees to use "new methods and scientific plan[s]" to fulfill its 2007 family planning goals and urged officials, "especially in 2007," to "stabilize low level birth" and "eliminate" births that exceeded the number allowed by family planning policies by "finish[ing] up the last round of operation of IUD[s] and . . . sterilization" and to "strictly prohibit birth[s]" that occurred

4

"outside policy." Two other government documents, including a March 2006 ordinance issued by the Administrative Office of the National Population and Family Planning Committee and a May 2003 Administrative Opinion issued by the Changle City Family Planning Board, stated that the national and Fujian family planning laws did not recognize the foreign citizenship of children born to Chinese parents. Those documents warned that "reproductive behaviors" in violation of family planning policies would be "sanctioned" and could be "considered an illegal birth." A May 2007 article in the Shanghai daily newspaper stated that "China is now cracking down on family planning violations," including births by government officials. Several other news articles in 2007 described the creation of "population schools" by local officials to detain citizens and force abortions and sterilizations.

Xiu offered the 2006 Country Report, which documented intensified enforcement of family planning policies. The report stated that officials in the Fujian Province forcibly sterilized women in 2006 and compelled citizens to undergo abortions and sterilizations by using financial penalties. The report also documented the forcible sterilization of "[a]t least 7,000 persons" in Shandong Province.

5

Xiu also offered evidence to establish that she, as a mother of two children born in the United States, would be subject to persecution upon removal to China. Xiu submitted an affidavit from Jin Fu Chen, which stated that he was forcibly sterilized by Changle City family planning officials in 2003 when he returned to Japan with his two children who had been born abroad. She also submitted a letter from the Family Planning and Birth Control Office of Hangcheng Township, Changle City dated July 20, 2007, which stated that Xiu's two sons would be "regulated as Chinese citizens"; the village "strictly implements" the family planning policy and "citizens with two children [are] the target of sterilization and have to undergo the sterilization operation"; and Xiu was to "strictly follow the family planning regulations" when she returned to China.

The Board denied Xiu's motion to reopen and her motion for leave to file a successive application for asylum. The Board found that the motion to reopen was time-barred. See 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b)(4)(ii). The Board concluded that Xiu had not satisfied the exception to the 90-day deadline because her evidence regarding the enforcement of family planning laws, which was similar to evidence the Board had considered in previous motions, did not establish a material change in circumstances in China and the birth of Xiu's children did not constitute a change in circumstances in the country of nationality.

6

The Board found that the letter from the Family Planning and Birth Control Office of Hangcheng Township was of "questionable authenticity" because Xiu did not submit the original with the motion to reopen. The Board denied leave to file a successive application for asylum because Xiu did not establish a change in country conditions and concluded that her "documentary evidence" was insufficient to establish that she would be persecuted by the Chinese government for "her alleged violation of the Chinese exit laws."

## II. STANDARDS OF REVIEW

We review the denial of a motion to reopen a removal proceeding for abuse of discretion. Li v. U. S. Att'y Gen., 488 F.3d 1371, 1374 (11th Cir. 2007) (citing Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001)). We review the legal conclusion of the Board de novo. Al Najjar, 257 F.3d at 1287. "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added).

## III. DISCUSSION

Xiu argues that the Board abused its discretion by denying her motion to reopen proceedings for failure to establish changed circumstances or a prima facie case of eligibility for asylum. She also argues that she should be permitted to file

7

a successive asylum application without filing a motion to reopen because she presented evidence of changed country conditions. Xiu argues that she presented evidence that local government officials recently have intensified enforcement of the China "one-child" policy.

To qualify for asylum or withholding of removal, an alien must establish that she has a well-founded fear of persecution if she is removed to her home country on account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3). The Immigration and Nationality Act states that forced abortions and sterilizations are considered persecution:

> A person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

INA § 101(a)(42)(B); 8 U.S.C.A. § 1101(a)(42)(B).

An alien may file a motion to reopen removal proceedings within 90 days after the final administrative decision. 8 C.F.R. § 1003.2(c)(2). The deadline does not apply if the motion to reopen is based on changed circumstances in the country

8

of the alien's nationality that was not available and could not have been presented at the removal hearing. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3). The Board has discretion to deny a motion to reopen for at least three reasons: "1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302.

We held recently that evidence of a campaign of forced sterilization in an alien's home village constitutes changed circumstances and qualifies for an exception to the 90-day filing deadline for a motion to reopen. Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007). Li submitted affidavits that reported accounts of sterilization in her home province and offered Country Reports of the State Department, the 2005 Consular Information Sheet, and congressional testimony to corroborate the affidavits. Id. at 1373. We concluded that Li submitted evidence that, since the time of her original removal hearing, government officials in the Fujian province "had intensified the persecution of parents of two children." Id. at 1375.

This case is indistinguishable from Li. Xiu presented evidence that government officials have changed their policies regarding the enforcement of

9

abortion and sterilization in her home village of Changle City and the Fujian province. Xiu submitted her own affidavit, which stated that she had a fear of forced sterilizations because of reports in her hometown that enforcement of the family planning policy had become "tougher" in the last year. Xiu's mother, Lin, attested that government officials in the Fujian province had intensified efforts to enforce family planning laws and Changle City officials had forced a man and woman in 2006 and 2007 to undergo sterilization for failing to comply with the village's family planning laws. Although the Board questioned the authenticity of the document from the Family Planning and Birth Control Office of Hangchen Township, the Board did not make any findings about the credibility of Xiu's or Lin's statements. Cf. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (a factfinder must make "'clean determinations of credibility'").

Xiu also presented substantial evidence to corroborate her anecdotal evidence that she would face persecution if she were returned to China. Xiu offered an affidavit from Jim Fu Chen that documented his forced sterilization in 2003 after he and his wife returned to China with two children that were born in Tokyo while the couple was studying abroad. Government documents also substantiate Xiu's claim of changed conditions. A document distributed by the Political Bureau of the Central Planning Committee for Fujian Province in

10

December 2006 ordered local family planning committees to use "new methods and scientific plan[s]" to fulfill 2007 family planning goals and urged officials, "especially in 2007," to "stabilize low level birth" and "eliminate birth[s] beyond policy." Consistent with that directive, the Changle City family planning committee issued a Notice to the public the next month that mandated sterilization after the birth of a second child and punishment for dissidents of the family planning policy. The 2006 report from the State Department and newspaper articles recounted human rights violations related to the Chinese family planning policies.

The government argues that this evidence establishes, at most, a "strict implementation" of the family planning laws, but that stricter enforcement is entirely the point. Xiu's evidence established that circumstances regarding the enforcement of family planning policies had intensified since Xiu filed her original application for asylum in 2000. It is no answer for the government to say that the family planning laws were not being enforced strictly earlier.

The Board denied Xiu's motion based on its rejection of similar evidence offered in previous motions, but those decisions are not persuasive. In stark contrast to the evidence offered by Xiu, previous applicants before the Board were found not credible and did not establish any change in the enforcement of the

Chinese family planning policy in their provinces. See In re S-Y-G, 24 I. & N. Dec. 247 (BIA 2007); In re J-W-S, 24 I. & N. Dec. 185 (BIA 2007). Although Xiu submitted a few documents that had been discounted by the Board in its earlier decisions, she also presented evidence that established that local officials have intensified enforcement of the policy through direct and indirect coercion. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (a factfinder must "consider *all* evidence introduced by the applicant" in support of asylum eligibility).

The Board abused its discretion when it refused to reopen Xiu's removal proceedings after Xiu established that conditions have changed in her country of origin since her original removal hearing. In the light of our decision to grant relief, we need not address whether Xiu is permitted to file a successive asylum application based on changed circumstances. We **GRANT** Xiu's petition, **VACATE** the order that denied Xiu's motion to reopen, and **REMAND** for consideration of Xiu's application for asylum.

**PETITION GRANTED**.